RUNDELL v. LA COMPAGNIE GÉNÉRALE TRANSATLANTIQUE.

(District Court, N. D. Illinois, N. D.    May 15, 1899.)

No. 9,175.

ADMIRALTY — MARITIME LAW OF FOREIGN NATION — ACTION FOR WRONGFUL DEATH.

> Courts of admiralty of the United States will not enforce the maritime law of a foreign nation, giving a right of action for death caused by a tort, on the ground that the alleged cause of action arose on a vessel of that nation, where it was at the time on the high seas, outside of waters subject to the jurisdiction of such nation.

This was a suit in admiralty by Rundell, administrator, against La Compagnie Générale Transatlantique, to recover for the death of his intestate while a passenger on defendant's steamship La Burgogne, through the alleged negligence of defendant. Heard on exceptions to the libel.

McClelland & Monroe, for libelant.
Isham, Lincoln & Beale, for defendant.

KOHLSAAT, District Judge. The libel in this cause recites the loss of the French steamship La Burgogne by collision on the high seas, and the death of libelant's intestate, by reason of the alleged

fault and negligence of defendant, the owner of the steamship,—a corporation organized under the laws of France. Without passing upon the sufficiency of the allegations of the libel respecting the laws of France governing similar actions, I will consider only the salient feature of the controversy, upon the decision of which depends libelant's right to maintain this action in this court. Libelant admits in argument that the general maritime law of this country gives no right of action for death, but claims that the laws of France do give such a right, that the death in question occurred under such circumstances that the laws of France controlled, and that this court will enforce the said laws, under the circumstances of this case.

The decisions of our supreme court in The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, and The Alaska, 130 U. S. 201, 9 Sup. Ct. 461, settled what had been theretofore a point of considerable dispute, and in regard to which numerous conflicting decisions in the lower courts had been rendered, to wit, that the admiralty courts of this country could not take cognizance of a suit to recover damages for the death of a human being upon the high seas, caused by negligence, in the absence of an act of congress or a statute of a state giving a right of action therefor. The cases arising since the latter decision (1888) which throw any appreciable light on the question in controversy herein are The City of Norwalk, 55 Fed. 98 (decision by Judge Brown), and Robinson v. Navigation Co., 20 C. C. A. 86, 73 Fed. 883 (decision by the court of appeals of the Sixth circuit). In the former case the court held that it had jurisdiction to enforce the law of a state within the navigable waters of which the tort causing death occurred; and the latter extended the doctrine to the enforcement of similar laws of a foreign state (the province of Ontario), where the tort causing death occurred within the waters over which such foreign state had jurisdiction. In the case at bar, libelant seeks to have this court go still further, and enforce the general maritime law of a foreign nation in regard to a death caused by a tort occurring on a vessel of that nation while on the high seas, and outside of waters subject to the jurisdiction of that nation, on the theory that the vessel is a part of that nation, and that such nation would enforce its own laws under the circumstances. The latest and principal authority cited in support of this contention is that of U. S. v. Rodgers, 150 U. S. 249, 14 Sup. Ct. 109, although other previous authorities are also cited. The decision in the Rodgers Case was based upon section 5346 of the Revised Statutes of the United States, which gives the federal courts jurisdiction of crimes "arising upon the high seas, or in any arm of the sea, or in any river, haven, creek, basin or bay within the admiralty jurisdiction of the United States and out of the jurisdiction of any particular state"; and all the other cases cited by libelant on this point, so far as jurisdiction of our federal courts is concerned, are criminal cases, and are based on federal statutes sought to be enforced. In The Scotland, 105 U. S. 29, our supreme court, after deciding that rights are to be generally determined by the laws of the particular country or state in which they arise, used the following language:

"But if a collision occurs on the high seas, where the law of no particular state has exclusive force, but all are equal, any forum called upon to settle the rights of the parties would prima facie determine them by its own law, as presumptively expressing the rules of justice; but, if the contesting vessels belonged to the same foreign nation, the court would assume that they were subject to the law of that nation, carried under their common flag, and would determine the controversy accordingly. If they belonged to different nations, having different laws, since it would be unjust to apply the laws of either to the exclusion of the other, the law of the forum (that is, the maritime law as received and practiced therein) would properly furnish the rule of decision. In all other cases each nation will administer justice according to its own laws. And it will do this without respect of persons,—to. the stranger as well as to the citizen. * * * Some laws, it is true, are necessarily special in their application to domestic ships, such as those relating to forms of ownership, charter party, and nationality. Others follow the vessel wherever she goes, as the law of the flag,—such as those which regulate the mutual relations of master and crew, and the power of the master to bind the ship or her owners. * * *"

The nearest analogy which these rules bear to the present controversy would be in a case of a collision between an American and a foreign vessel, and in such case the question would be as to whether or not our courts would be governed uniformly by the maritime law recognized by.them generally, or would only be governed by it at pleasure, and would be at liberty to follow the maritime law as administered by the nation of the foreign vessel, when the latter would tend to increase the rights of our own citizens. None of the cases cited by libelant decide that the law of the.flag will be considered as governing a tort of a vessel towards its passengers while on the high seas, to such an extent that it will be enforced in a foreign forum as the maritime law applicable, in lieu of the general maritime law as recognized in that foreign forum, which, with respect to that particular tort, gives no right of action.

I am unable to find that this question has ever been passed upon by our courts, but, while the cases cited by defendant do not specifically refer to the point actually in controversy here, yet the wording of the generalized statements contained in the authorities upon which it relies seems to cover its contention; and, as a number of other suits will depend upon the final decision of this point, a speedy decision by the courts of last resort upon the question is desirable, before litigants are put to the trouble and expense of a full trial upon the merits. In order, therefore, that the matter may go up on a simple record, and at a minimum expense, I will sustain defendant's exception upon this point, and dismiss the libel.